# UNITED STATES DISTRICT COURT

for the
Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of: | ) |
| | ) |
| information between August 1, 2014 and Present Date, | ) |
| associated with the Instagram user IDs "machefner_ege" - | )    Case No. _20m 812_ |
| ID # 33734195 and "mahefner13" – ID # 41988349, more | ) |
| fully described in Attachment A | ) |
| | ) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

    See Attachment A

located in the Eastern District of Wisconsin, there is now concealed:

    See Attachment B

The basis for the search under Fed. R. Crim P. 41(c) is:

    ☒ evidence of a crime;
    ☐ contraband, fruits of crime, or other items illegally possessed;
    ☒ property designed for use, intended for use, or used in committing a crime;
    ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to violations of:
Title 18 United States Code, Sections 922(a)(6), felon in possession of a firearm in violation of Title 18 U.S.C. 922(g)(1), conspiracy to possess with the intent to distribute and distributing a controlled substance in violation of Title 21 U.S.C. 841(a)(1) and 846, and money laundering in violation of Title 18 U.S.C. 1956.

The application is based on these facts: See attached affidavit.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days:_____ ) is requested
    under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Frank Rutter, SA
*Printed Name and Title*

Sworn to before me and signed in my presence:
Date: _January 9, 2020_
    *11:10 Am*

_____
*Judge's signature*

City and State: Milwaukee, Wisconsin    William Callahan    U.S. Magistrate Judge
    *Printed Name and Title*

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Special Agent Frank Rutter, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant for information associated with two Facebook user IDs that are stored at premises owned, maintained, controlled, or operated by Facebook Inc. ("Facebook"), a social networking company headquartered in Menlo Park, California 94025. The information to be searched is described in the following paragraphs and in Attachment A and consists of the Instagram accounts associated with the below described Facebook accounts. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Facebook to disclose to the government records and other information in its possession, pertaining to the subscribers or customers associated with the user IDs.

2. I am employed with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and have been since 2015. As an ATF Agent, I have conducted numerous investigations involving violations of federal and state laws including violations of 18 U.S.C. § 922(a)(6), commonly referred to as "lying and buying" as well as investigations related to the unlawful use/possession of firearms and firearms trafficking; investigations involving violations of 21 U.S.C. § 841(a)(1) and 846 (conspiracy to possess with the intent to distribute and distributing a controlled

substance); and investigations involving violations of 18 U.S.C. § 1956 (money laundering). I have had a variety of formal, informal, and on the job training in the investigation of illegal firearms possession and firearms trafficking; I have participated in the execution of search warrants in which firearms, ammunition and controlled substances were seized; and I am familiar with the street name(s) of firearms, controlled substances and respective related topics, and have knowledge of the use of money laundering to conceal ill-gotten money.

3.      During the course of my career, I have conducted criminal investigations involving the use of social media. Additionally, I have received training and instruction regarding the use of social media sites by criminal elements. I have conducted previous criminal investigations in which internet research that I conducted yielded the use of social media by suspects. Specifically, I know from my training and experience that alleged suspects of criminal activity, who have accounts on social media websites, will often communicate their criminal intentions or past activity via "instant message" or "in-box message" on a given social media website. The "instant message" / "in-box message" is a private communication from one user to another. Furthermore, I know through experience that many social media users often use social media websites as their primary means to communicate with others. Additionally, I know from training and experience that suspects who use social media websites sometimes post photographs of themselves possessing incriminating items, such as narcotics, unexplained large amounts of cash, and firearms. Also, suspects in criminal

2

investigations have been known to post statements and/or lyrics on social websites referencing their own criminal activity.

4. Additionally, I have conducted and participated in investigations in which information obtained from ATF's National Integrated Ballistics Information Network (NIBIN) program has aided investigative efforts. The NIBIN program automates ballistics evaluations and provides actionable investigative leads in a timely manner. To use NIBIN, firearms examiners or technicians enter cartridge casing evidence into the Integrated Ballistic Identification System. These images are correlated against the database. Law enforcement can search against evidence from their jurisdiction, neighboring ones, and others across the country. NIBIN is the only interstate automated ballistic imaging network in operation in the United States and is available to most major population centers in the United States.

5. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrants and does not set forth all of my knowledge about this matter.

6. Based on my training, experience, and the facts as set forth in this affidavit, there is probable cause to believe that Adrien Kelley (1990) and Davonte R. Underwood (1989) in violation of Title 18 U.S.C. 922 (g)(1) (Felon in Possession of a Firearm); crimes in violations of 21 U.S.C. §§ 841(a)(1) and 846 (conspiracy to possess with the intent to distribute and distributing a controlled substance); and crimes in

3

violation of 18 U.S.C. 1956 (money laundering). There is also probable cause to search

the information described in Attachment A for evidence of these crimes, as described in

Attachment B. There is also probable cause to believe that the information sought will

assist law enforcement in identifying both Kelley's and Underwood's co-conspirators,

those who act as "straw purchasers" for either of them, their other sources of firearms

and controlled substances, and the manner in which others may be working with either

one of them to launder the money obtained from illegal activity.

## PROBABLE CAUSE

### Recovery of Glock model 19 pistol bearing serial number BLHG434

7.      On October 4, 2019, MPD observed a 2019 Blue Jeep Compass (IL tag FP97376) with excessive window tint obstructing a driveway near the 5700 block of W. Silver Spring Drive in Milwaukee. Officers attempted to conduct a traffic stop and the vehicle fled. Officers pursued the vehicle until it crashed into a tree near 4988 N. 60th Street. Two (2) subjects fled who were subsequently arrested and identified as Underwood (driver) and Layne (passenger). A search of the vehicle resulted in the recovery of a number of evidentiary items including, but not limited to, a Glock model 19 pistol bearing serial number BLHG434 (front driver floorboard area), suspected illegal prescription pills, suspected marijuana, cellular devices and approximately \$3,462.00 in United States currency.

8.      The firearm subsequently underwent forensic examination and a fingerprint for Underwood was found on the firearm's magazine. Underwood was charged with being a felon in possession of this firearm, felony fleeing and Second Degree Recklessly Endangering Safety. The case is still pending in Wisconsin state court (Milwaukee County Case 2019CF004479).

4

9.     Affiant reviewed ATF eTrace information for the above referenced Glock pistol bearing serial number BLHG434. Affiant learned this firearm was purchased approximately thirteen (13) days prior on September 21, 2019 at Wisconsin Firearms Training Center (FFL: 3-39-07283) located at 12730 W. Burleigh Road in Brookfield, Wisconsin. The firearm was purchased by Adrien L. Kelley (1990). During this purchase, Kelley was required to complete various documents including ATF Form 4473 which is a firearm purchase record required by federal law to be completed when a Federal Firearm Licensee (FFL) transfers a firearm to anyone who does not possess an FFL. ATF Form 4473 documents specifically which firearm/s were sold and to whom they were transferred. Kelley answered "yes" to question 11(a) which stated:

> "Are you the actual transferee/buyer of the firearm(s) listed on this form? Warning: You are not the actual transferee/buyer if you are acquiring the firearm(s) on behalf of another person. If you are not the actual transferee/buyer, the licensee cannot transfer the firearm(s) to you."

10.     Your affiant knows, from his training and experience that individuals who cannot legally purchase firearms because of previous felony conviction/s will often recruit "straw purchasers" to illegally obtain firearm/s on their behalf. These "straw purchases" are often completed with the intent to conceal the true identity of the intended recipient of the firearm. These types of transactions are commonly conducted for financial gain of the "straw purchaser" or as the result of a relationship (familial/romantic/platonic) between the previously convicted felon and the original purchaser. When a firearm is recovered by law enforcement, the firearm information is generally submitted for tracing information. This tracing information can help to identify the origin of the firearm. A common indicator of firearm straw purchasing can be relative short timespans between the purchase of a firearm and its ultimate recovery by law

5

enforcement during a crime. Under these circumstances, the short "time to crime" was an investigative lead into the firearm purchasing habits of Kelley. The investigation has revealed to date that Kelley has had a long-term relationship with Underwood, has a child with him; and (as further described below) has been connected to numerous illegally obtained firearms recovered from Underwood.

**Recovery of Sig Sauer 9mm pistol bearing serial number 24B094793**

11. Your affiant, as part of this investigation learned another firearm had been recovered from Underwood in 2014 that linked to Kelley. Your affiant reviewed ATF eTrace information and West Allis (WI) Police Department reports regarding the recovery of a firearm from Underwood on September 4, 2014 in West Allis (Case 14-007844).

12. On September 4, 2014, West Allis Police Department recovered a Sig Sauer 9mm pistol bearing serial number 24B094793 during a traffic stop. The firearm was recovered from a backpack Underwood was carrying when he was observed entering the vehicle after leaving "The Big Picture Barbershop," a business located in Milwaukee, Wisconsin. Also recovered from Underwood's backpack was approximately eight hundred fifty five dollars in United States currency and approximately seventy four (74) grams of a green leafy substance that subsequently tested positive for THC. The firearm was listed as stolen with Wauwatosa Police Department case 13-002024). The possessor, Underwood, was arrested, charged and convicted for being a felon in possession of a firearm (Milwaukee County Case 2014CF004021). Significantly, Kelley was the driver of the vehicle. During an interview with law enforcement, Kelley stated she had purchased the firearm secondhand and provided it to Underwood. Kelley explained she was unaware Underwood was a previously convicted felon and prohibited from possessing firearms.

6

It should be noted Kelley stated she was in a relationship with Underwood and pregnant with Underwood's child.

**Recovery of .40 caliber Smith & Wesson SD40VE pistol bearing serial number FWR8389.**

13.     Your affiant also reviewed MPD reports (Case 16-101-0095) related to an arrest of Underwood that occurred on April 10, 2016.

14.     On April 10, 2016, MPD arrested Underwood pursuant to an active arrest warrant for violation of parole related to the aforementioned 2014 felon in possession of a firearm conviction. Officers observed Underwood exit a red in color, Volkswagen sedan bearing New York license plate GYR-3001 which was parked in front of 6722 W. Lisbon Avenue in Milwaukee, Wisconsin. Underwood was arrested after a brief foot pursuit. Recovered during the search incident to arrest was a car key (red Volkswagen), a cellular device and approximately three thousand three hundred and twenty five dollars ($3,325.00) in United States currency. Recovered from the vehicle was a .40 caliber Smith & Wesson SD40VE pistol bearing serial number FWR8389. The firearm had an extended magazine with twenty two (22) rounds of unfired ammunition. Also recovered from the vehicle, among other items, were three (3) cellular phones and approximately twenty eight and fifty five hundredths (28.55) grams of a green leafy substance which subsequently tested positive for THC. During a subsequent interview with law enforcement, Underwood explained he had had been in the red Volkswagen sedan, but was unaware of any firearms or marijuana inside the vehicle. Underwood explained the recovered United States currency was the sum of birthday gifts his son had received the night prior. Underwood stated he was unsure if the firearm located in the vehicle belonged to Kelley. Underwood explained Kelley had rented the red Volkswagen.

7

15. On the same date, MPD officers made contact with 6722 W. Lisbon Ave., Unit 1, in Milwaukee, Wisconsin. Officers did this after finding a key recovered in the aforementioned red Volkswagen sedan unlocked the door to Unit 1 rather than Underwood's listed address (Unit 2) with Wisconsin Probation and Parole. Officers were met by Kelley. A search of the residence resulted in the recovery of .40 caliber ammunition, .25 caliber ammunition, indicia documents for Underwood and a green leafy substance which later tested positive for THC. During an interview with law enforcement, Kelley stated the recovered firearm (SN: FWR8389) with the extended magazine belonged to her. Kelley stated she had purchased the firearm approximately one and a half (1.5) years prior and kept the firearm in her vehicle because she knew Underwood was a felon and could not possess firearms. Kelley explained she did not know to whom the marijuana belonged and that Underwood did not drive the vehicle.

16. It should be noted the Smith & Wesson firearm bearing serial number FWR8389 had been originally purchased two hundred and twenty (220) days prior on September 3, 2015 by Antwan Townes (1988) from Mills Fleet Farm (FFL: 3-39-15155) located at N96 W18200 County Line Road in Germantown, Wisconsin.

17. Your affiant has learned that Antwan Townes works at the "Big Picture Barber Shop" which is the barbershop Underwood was seen leaving on September 4, 2014.[1]

**Recovery of Schryver S-15 pistol bearing serial number S00180, Magnum Research Desert Eagle bearing serial number SB100588 and Kahr CW9 pistol bearing serial number EI0547 on January 1, 2019.**

---

[1]    Common practices for money laundering of firearm and drug proceeds include businesses that are cash intensive and can easily explain a disproportionate amount of its income through large cash deposits, such as barbershops.

8

18.     On January 1, 2019, MPD arrested Underwood at 3155 N. 78th Street in Milwaukee, Wisconsin. Underwood was wanted in regards to an Armed Robbery and First Degree Reckless Injury investigation. Officers also encountered Kelley inside the residence. Recovered from the residence were items of evidentiary value including, but not limited to, three (3) firearms, ammunition, three (3) cellular phones and green leafy substances that tested positive for THC. It should also be noted multiple empty containers containing green leafy residue were located and the bathroom toilet bowl contained green leafy residue. During an interview with law enforcement, Underwood stated he had no knowledge of the recovered firearms. During an interview with law enforcement, Kelley stated she had two (2) firearms which belonged to her kept in her closet and one (1) firearm in the basement that belonged to another family member. Recovered from Kelley's coat pockets was approximately eleven and eighty seven hundredths (11.87) grams of marijuana. Kelley stated she has been smoking marijuana since she was thirteen (13) years old and that she smoked marijuana multiple times daily. The recovered firearms can be described further as 1) Schryver S-15 pistol bearing serial number S00180, 2) Magnum Research Desert Eagle bearing serial number SB100588 and 3) Kahr CW9 pistol bearing serial number EI0547.

**Social Media and Instagram Related To Underwood and Kelley**

19.     Affiant located and reviewed the publicly available portion of a Facebook account with the vanity name "Mac Hefner Underwood" (Facebook User ID 100010906875202). Affiant compared photographs from the aforementioned Facebook page (ID 100010906875202) with a Wisconsin Department of Transportation (DOT) driver's license image for Underwood dated January 7, 2019. Affiant found the images appeared consistent and represented the same individual.

9

20. During further review of Underwood's Facebook account, affiant located multiple links to YouTube videos that depicted Underwood singing hip-hop style music and frequently displaying what appears to be large amounts of United States currency. These videos spanned numerous years and each had Underwood being the main singer and actor. Below are just a few examples of videos viewed:

a. A video posted November 11, 2019, titled "On the Run Again" showed Underwood singing about fleeing from the police. Underwood referenced crashing into a tree and how the police were lucky to apprehend him because he was driving a "Jeep." It should be noted these statements appear consistent with facts related to the arrest of Underwood by MPD on October 4, 2019 when Underwood fled from MPD and ultimately crashed a Jeep vehicle into a tree (see paragraphs 7-10 above).

b. Another video published on November 3, 2018 entitled "On the Run" included Underwood singing that he was riding around with firearms and had spent ten thousand dollars ($10,000.00) on firearms the previous month.

c. Affiant also located a video Underwood posted directly to his Facebook account on May 30, 2019. During review of this video, Underwood can be seen repeatedly handling quantities of a green leafy substance packaged in multiple knotted plastic bags. The manner in which the substance was packaged appeared consistent with street level sales. Also during the video, Underwood displayed what appeared to be large amounts of United States currency in assorted denominations including small bills. Below are two screenshots from that video. Affiant knows Underwood has previous felony convictions for illegal possession

10

of THC (Milwaukee County Case 2013CF001069) and possession with intent-THC (Milwaukee County Case 2009CF001345). Additionally, affiant is aware the aforementioned arrests of Underwood on September 4, 2014, April 10, 2016, and October 4, 2019 each included the recovery of green leafy substances that subsequently tested positive for THC and large amounts of United States currency.



22.     Affiant located and reviewed the publicly available portion of an Instagram account with the username "machefner_ege" (Instagram User ID 33734195). Affiant found promotions for Underwood's Instagram page during review of Underwood's aforementioned

11

YouTube music videos. I know from my training and experience that an Instagram promotion allows the person who controls the Instagram page to incentivize people to "follow" them and increase their brand awareness by having entrants share the promotion with their own networks.

23. Affiant also compared photographs from the aforementioned Instagram page (ID 33734195) with a Wisconsin Department of Transportation (DOT) driver's license image for Underwood dated January 7, 2019. Affiant found the images appeared consistent and represented the same individual.

24. Affiant also located and reviewed the publicly available portion of an Instagram account with the username "mahefner13" (Instagram User ID 41988349). The account also had a display name of "Adrien MamaBadd Kelley." Affiant compared photographs from the aforementioned Instagram page (ID 41988349) with a Wisconsin Department of Transportation (DOT) driver's license image for Adrien Kelley dated February 16, 2019. Affiant found the images appeared consistent and represented the same individual.

25. Your affiant is aware through training and experience that those engaged in the illegal sale and distribution of narcotics and/or firearms need to conceal the proceeds their illegally obtained money through money laundering. Many of those involved in criminal activity will communicate with those involved in their criminal activity by the use of Instagram and/or other forms of social media. .

26. Based upon affiant's investigation, training and experience, affiant believes probable cause exists to believe that Underwood, Kelley, and other co-conspirators committed violations of Title 18, United States Code, Sections 922(a)(6) (lying and buying) and purchased the aforementioned Glock firearm bearing serial number BLHG434 on September 21, 2019 for Underwood. Affiant is aware that those who engage is the straw purchase of firearms typically

12

do so in order to conceal the true identity of the intended recipient of the firearm. This technique is commonly utilized by previously convicted felons who wish to obtain a firearm but cannot legally do so as a result of a previous felony conviction or convictions.

27.    Affiant believes additional information relevant to the investigation involving violations of Title 18, U.S.C. 922(a)(6) (lying and buying), Title 18 U.S.C. 922(g)(1) (Felon in Possession of a Firearm), Title 21 U.S.C. 841(a)(1) and 846 (conspiracy to possess with the intent to distribute and distributing a controlled substance) and Title 18 U.S.C. 1956 (money laundering) is housed within the Instagram accounts of Davonte Underwood and Adrien Kelley

## *FACEBOOK INFORMATION*

28.    Facebook owns and operates a free-access social networking website of the same name that can be accessed at http://www.facebook.com. Facebook allows its users to establish accounts with Facebook, and users can then use their accounts to share written news, photographs, videos, and other information with other Facebook users, and sometimes with the general public. Facebook also operates Instagram accounts that are associated with a Facebook account.

29.    Facebook asks users to provide basic contact and personal identifying information to Facebook, either during the registration process or thereafter. This information may include the user's full name, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers (for password retrieval), physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers. Facebook also assigns a user identification number to each account.

30.    Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network. Facebook assigns a group

13

identification number to each group. A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request." If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other. Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

31.     Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts. By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users. A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

32.     Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times. A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

14

33.     Facebook allows users to upload photos and videos, which may include any metadata such as location that the user transmitted when s/he uploaded the photo or video. It also provides users the ability to "tag" (i.e., label) other Facebook users in a photo or video. When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video. For Facebook's purposes, the photos and videos associated with a user's account will include all photos and videos uploaded by that user that have not been deleted, as well as all photos and videos uploaded by any user that have that user tagged in them.

34.     Facebook users can exchange private messages on Facebook with other users. These messages, which are similar to e-mail messages, are sent to the recipient's "Inbox" on Facebook, which also stores copies of messages sent by the recipient, as well as other information. Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile. In addition, Facebook has a Chat feature that allows users to send and receive instant messages through Facebook. These chat communications are stored in the chat history for the account. Facebook also has a Video Calling feature, and although Facebook does not record the calls themselves, it does keep records of the date of each call.

35.     If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

36.     Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages. Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (*i.e.*, non-Facebook) websites. Facebook users can also become "fans" of particular Facebook pages.

15

37.     Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

38.     Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

39.     Facebook Notes is a blogging feature available to Facebook users, and it enables users to write and post notes or personal web logs ("blogs"), or to import their blogs from other services, such as Xanga, LiveJournal, and Blogger.

40.     The Facebook Gifts feature allows users to send virtual "gifts" to their friends that appear as icons on the recipient's profile page. Gifts cost money to purchase, and a personalized message can be attached to each gift. Facebook users can also send each other "pokes," which are free and simply result in a notification to the recipient that he or she has been "poked" by the sender.

41.     Facebook also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

42.     In addition to the applications described above, Facebook also provides its users with access to thousands of other applications ("apps") on the Facebook platform. When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

43.     Some Facebook pages are affiliated with groups of users, rather than one individual user. Membership in the group is monitored and regulated by the administrator or

16

head of the group, who can invite new members and reject or accept requests by users to enter. Facebook can identify all users who are currently registered to a particular group and can identify the administrator and/or creator of the group. Facebook uses the term "Group Contact Info" to describe the contact information for the group's creator and/or administrator, as well as a PDF of the current status of the group profile page.

44.    Facebook uses the term "Neoprint" to describe an expanded view of a given user profile. The "Neoprint" for a given user can include the following information from the user's profile: profile contact information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications.

45.    Facebook also retains Internet Protocol ("IP") logs for a given user ID or IP address. These logs may contain information about the actions taken by the user ID or IP address on Facebook, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action. For example, if a user views a Facebook profile, that user's IP log would reflect the fact that the user viewed the profile, and would show when and from what IP address the user did so.

46.    Social networking providers like Facebook typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number). In some cases, Facebook users may

17

communicate directly with Facebook about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Facebook typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

47.     As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, a Facebook user's "Neoprint," IP log, stored electronic communications, and other data retained by Facebook, can indicate who has used or controlled the Facebook account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time. Further, Facebook account activity can show how and when the account was accessed or used. For example, as described herein, Facebook logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation. Additionally, Facebook builds geo-location into some of its services. Geo-location allows, for example, users

18

to "tag" their location in posts and Facebook "friends" to locate each other. This geographic and timeline information may tend to either inculpate or exculpate the Facebook account owner. Last, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation. For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

48. Therefore, the computers of Facebook are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

49. I know based on my training and experience that those involved in the illegal sale of firearms, drug distribution and/or money laundering use Facebook to show cash, vehicles, clothing, jewelry and other material goods they obtained as a result of their criminal conduct. I also know that such criminals will use Facebook to describe their illegal activity to their friends so as to gain status and recognition.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

50. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Facebook to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

19

## CONCLUSION

51.     Based on the forgoing, I request that the Court issue the proposed search warrant and I submit that this Affidavit supports probably cause for a search warrant authorizing the search of the "machefner_ege" (User ID # 33734195) Instagram account and the "mahefner13" (User ID # 41988349) Instagram account described in Attachment A for the items of evidence described in Attachment B.

52.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court of the Eastern District of Wisconsin is a district court of the United States that has jurisdiction over the offense(s) being investigated, 18 U.S.C. § 2711(3)(A)(i).] Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information between August 1, 2014 and Present Date, associated with the Instagram user IDs "machefner_ege" - ID # 33734195 and "mahefner13" – ID # 41988349 that is stored at premises owned, maintained, controlled, or operated by Facebook, a company headquartered in Menlo Park, California.

## ATTACHMENT B

### Particular Things to be Seized

### I.    Information to be disclosed by Facebook

To the extent that the information described in Attachment A is within the possession, custody,

or control of Facebook, including any messages, records, files, logs, or information that have

been deleted but are still available to Facebook, or have been preserved pursuant to a request

made under 18 U.S.C. § 2703(f), Facebook is required to disclose the following information to

the government for each user ID listed in Attachment A:

      a.      All contact and personal identifying information, including: full name, user

identification number, birth date, gender, contact e-mail addresses, Facebook

passwords, Facebook security questions and answers, physical address (including

city, state, and zip code), telephone numbers, screen names, websites, and other

personal identifiers.

      b.      All activity logs for the account and all other documents showing the user's posts

and other Facebook activities;

      c.      All photos and/or videos uploaded by that user ID and all photos and/or videos

uploaded by any user that have that user tagged in them including Exchangeable

Image File ("EXIF") data and any other metadata associated with those photos

and videos;

      d.      All profile information; News Feed information; status updates; links to videos,

photographs, articles, and other items; Notes; Wall postings; friend lists, including

the friends' Facebook user identification numbers; groups and networks of which

the user is a member, including the groups' Facebook group identification

numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

e.  All other records of communications and messages made or received by the user, including all private messages, chat history, video calling history, and pending "Friend" requests;

f.  All "check ins" and other location information;

g.  All IP logs, including all records of the IP addresses that logged into the account;

h.  All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

i.  All information about the Facebook pages that the account is or was a "fan" of;

j.  All past and present lists of friends created by the account;

k.  All records of Facebook searches performed by the account;

l.  All information about the user's access and use of Facebook Marketplace;

m.  The types of service utilized by the user;

n.  The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

o.  All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

2

p.   All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

Facebook is hereby ordered to disclose the above information to the government within 14 DAYS of service of this warrant.

## II.   Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of Title 18 U.S.C. 922(g)(1) (Felon in Possession of a Firearm),; crimes in violations of 21 U.S.C. §§ 841(a)(1) and 846 (conspiracy to possess with the intent to distribute and distributing a controlled substance); and crimes in violation of 18 U.S.C. 1956 (money laundering) since August 1, 2014 for each user ID identified on Attachment A, information pertaining to the following matters:

(a) The relevant offense conduct, any preparatory steps taken in furtherance of the scheme, communications between Davonte Underwood and others related to the relevant offense conduct;

(b) Information pertaining to the following matters including any messages, photographs, videos, memes, status updates, comments, and other postings related to:

   a.   Interstate travel;

   b.   Recruitment of straw purchasers;

   c.   locations of properties, jewelry, and items purchased from illegal activity;

   d.   Adrien Kelley

   e.   Antwan Townes

3

        f.   Drug stash houses

(c) Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook account owner;

(d) Evidence indicating the Facebook account owner's state of mind as it relates to the crime under investigation;

(e) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

(f) The identity of the person(s) who communicated with the user ID about matters relating to relevant offense conduct of the crime under investigation, including records that help reveal their whereabouts.

4

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC BUSINESS
## RECORDS PURSUANT TO FEDERAL RULE OF EVIDENCE 902(11)

I, _____, attest, under penalties of perjury under the

laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information

contained in this declaration is true and correct. I am employed by Facebook, and my official

title is _____. I am a custodian of records for Facebook. I state

that each of the records attached hereto is the original record or a true duplicate of the original

record in the custody of Facebook, and that I am the custodian of the attached records consisting

of _____ (pages/CDs/kilobytes). I further state that:

a.       all records attached to this certificate were made at or near the time of the occurrence of

the matter set forth, by, or from information transmitted by, a person with knowledge of those

matters;

b.       such records were kept in the ordinary course of a regularly conducted business activity

of Facebook; and

c.       such records were made by Facebook as a regular practice.

I further state that this certification is intended to satisfy Rule 902(11) of the Federal

Rules of Evidence.

_____          _____

Date                                                              Signature